**PASHMAN STEIN WALDER HAYDEN**
A Professional Corporation
Sean Mack, Esq.
Michael J. Zoller, Esq.
2900 Westchester Avenue, Suite 204
Purchase, New York 10577
Phone: (914) 612-4092
Fax: (914) 612-4088
smack@pashmanstein.com
mzoller@pashmanstein.com

**Maldjian Law Group, LLC**
John Maldjian, Esq.
William J. Connelly, III, Esq.
830 Third Avenue, 5th Floor
New York, New York 10022
Phone: (732) 889-1500
Fax: (732) 908-1027
jmaldjian@mlgiplaw.com
wconnelly@mlgiplaw.com

Attorneys for Plaintiff
  **Venus Et Fleur, LLC**

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VENUS ET FLEUR, LLC, | |
| Plaintiff, | CIVIL ACTION NO.: |
| v. | Civil Action |
| ETERNAL FLEUR, LLC and AMANDA WOJTAS, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiff, Venus Et Fleur, LLC, through its undersigned counsel, Pashman Stein Walder Hayden, A Professional Corporation, complains against the Defendants as follows:

### PARTIES

1.   Plaintiff Venus Et Fleur, LLC ("Venus") is a New

Jersey limited liability company with is principal place of business located at 246 8th Avenue, 3rd Floor, New York, New York 10011.

2.   Upon information and belief, Defendant Eternal Fleur, LLC ("Eternal Fleur") is a New York limited liability company with its principal place of business located at 112-01 Queens Boulevard, Apt. PHC, Forest Hills, New York 11375.

3.   Upon information and belief, Defendant Amanda Wojtas is a resident of the state of New York, with an address in Manhattan.

### JURISDICTION and VENUE

4.   The Court has jurisdiction over all causes of action set forth herein based upon 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338 and pursuant to the supplemental jurisdiction of this Court for all non-federal causes of action under 28 U.S.C. § 1367.

5.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) as, upon information and belief, defendant Eternal Fleur is a resident of the Southern District of New York and defendant Amanda Wojtas is a resident of New York.

### FACTUAL ALLEGATIONS

### Background of Venus et Fleur, LLC

6.   Venus was started in 2015 with the idea of providing

2

consumers with the opportunity to combine the loving gesture of sending flowers into a comprehensive and exceptional artistic experience.

7.   Since its inception in 2015, Venus has grown into an internationally recognized brand that has revolutionized the online floral buying experience.

8.   Venus uses roses grown in Ecuador that are treated with a proprietary treatment that allows the roses to maintain their freshness and elegance for up to a year.

9.   Each Venus rose arrangement is meticulously curated by a floral design specialist and packaged in a distinct Venus box.

10.  Venus' revolutionary flowers and packaging design has created an entirely new category in the flower industry, which competitors have been aggressively trying to imitate.

### Venus' Trademarks

11.  Venus is the owner of the trademarks Venus et Fleur® (standard characters), which was registered in the United States Patent and Trademark Office on January 17, 2017 (Reg. No. 5,122.248), and Venus et Fleur® + Design, which was registered in the United States Patent and Trademark Office on September 5, 2017 (Reg. No. 5,122,248), both for online retail store services featuring flowers, floral bouquets and floral arrangements.

12.  Venus is also the owner of the trademark Eternity® (standard characters), which was registered in the United States

3

Patent and Trademark Office on July 3, 2018 (Reg. No. 5,508,537), in connection with cut flowers, namely roses.

13. Venus has used the mark ETERNITY® for collections of roses continuously since November 9, 2015.

14. Venus has expended substantial time, effort and money in creating awareness of and promoting the mark ETERNITY® and as a result the mark ETERNITY® has attained widespread recognition in the field of cut flowers, namely roses, and the online sale thereof. During that time, the ETERNITY® trademark has become imbued with goodwill and renown, which is exclusively associated with Venus' goods and services.

### Eternal Fleur's Infringement

15. Upon information and belief, Eternal Fleur was established in or about July 2017 by Amanda Wojtas for the purpose of selling flowers, floral bouquets, and floral arrangements under the mark ETERNAL FLEUR – THE FOUR SEASONS ROSE.

16. The word "Fleur" means flowers in French and is descriptive of the goods being sold under the ETERNAL FLEUR mark and is also part of Venus' registered marks VENUS ET FLEUR.

17. The mark ETERNITY® and the mark component ETERNAL are highly similar and the word Eternal is a formative of the word Eternity.

18. The component Four Seasons Rose is in small print, is

4

descriptive or mildly suggestive, and is an insignificant part of Eternal Fleur's mark.

19. The ETERNAL component is the dominant part of the mark.

20. Given Venus' use of its marks ETERNITY® and VENUS ET FLEUR® in connection with roses and the online sale of roses, Defendants' use of the trademark component ETERNAL FLEUR as the dominant part of its mark and its use of the word "Fleur" in its mark in connection with the same goods and services has and will cause confusion for the public.

21. Upon information and belief, there have been instances of actual confusion.

22. Defendants' misappropriation of Venus' word mark ETERNITY® by using the almost identical formative word ETERNAL for the same goods and services as Venus' trademark constitutes trademark infringement, unfair competition, false designation of origin and passing-off in violation of the Lanham Act and state law.

23. Defendants were aware of the ETERNITY® trademark and Venus' rights in and to such trademark, prior to adopting and using the ETERNAL mark.

24. In July 2015, Venus co-founder Seema Bansal had a text message conversation with Amanda Wojtas whereby they discussed the flowers Venus was about to begin selling and Venus' strategy

5

for beginning sales and eventual expansion.

25. In the conversation, Ms. Bansal also directed Ms. Wojtas to the website for Venus so she could look at the products that were about to be sold.

26. After receipt of the website link, Ms. Wojtas confirmed that she went through the website and that she loved it.

27. Ms. Wojtas, and thus Defendants', knowledge of Venus' marks extended beyond Ms. Wojtas 2015 conversation with Ms. Bansal.

28. Venus' sales records show that Ms. Wojtas placed two orders for roses with Venus, one on June 11, 2017 and one on August 6, 2017.

29. Upon information and belief, defendant Wojtas chose the ETERNAL mark to confuse and deceive customers that Defendants' goods were associated with, approved by, or sponsored by Venus.

30. The goods and services offered by Defendants in connection with the ETERNAL mark are highly similar to and directly competitive with the goods and services provided by Venus under its trademarks.

31. Venus has no association, affiliation, sponsorship, or any other connection to Defendants.

32. On or about June 8, 2018, Venus sent a cease and

desist letter to Eternal Fleur demanding that it stop using the mark ETERNAL in connection with the sale of roses, other flowers, flower bouquets, floral arrangements, and similar goods.

33. Despite the notice from Venus, Defendants continue to use the mark ETERNAL in connection with the sale of roses, other flowers, flower bouquets, floral arrangements, and similar goods.

34. Venus has been and continues to be damaged by Defendants' use of the mark ETERNAL.

**FIRST COUNT**
**Infringement of Registered Trademark**
**in Violation of 15 U.S.C. § 1114(1)**

35. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth at length herein.

36. Defendants' use of the ETERNAL mark is likely to cause confusion, or to cause mistake, or to deceive as to origin, sponsorship, or approval of Defendants' good and/or services in violation of 15 U.S.C. § 1114(1).

37. Upon information and belief, Defendants' conduct, including its continuing infringement after notice, was committed willfully, knowingly, maliciously, and in conscious disregard of Venus' rights.

38. The aforesaid infringement by Defendants has caused,

7

and unless restrained by this Court will continue to cause, immediate and irreparable injury to Venus' business, goodwill, and reputation.

39. Because Venus' remedy at law is inadequate, Venus seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to protect its trademark and other legitimate business interests. Venus' business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

40. Venus has a substantial likelihood of success on the merits because of Defendants' blatant, willful, and malicious infringement on Venus' trademark, especially after notice to cease and desist was provided.

41. Venus has been damaged by all of the foregoing, and is entitled to its damages, in an amount to be determined at trial, Defendants' profits, the cost of this action, and attorney's fees.

**SECOND COUNT**

**Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(a)**

42. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth at length herein.

43. Defendants' use of the ETERNAL mark is likely to cause

8

confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Venus in violation of 15 U.S.C. § 1125(a).

44. Defendants' use of the ETERNAL mark is likely to cause confusion, or to cause mistake, as to the origin, sponsorship, or approval of Defendants' goods or services in violation of 15 U.S.C. § 1125(a).

45. Upon information and belief, Defendants' conduct, including its continuing infringement after notice, was committed willfully, knowingly, maliciously, and in conscious disregard of Venus' rights.

46. The aforesaid infringement by Defendants has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Venus' business, goodwill, and reputation.

47. Because Venus' remedy at law is inadequate, Venus seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to protect its trademark and other legitimate business interests. Venus' business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

48. Venus has a substantial likelihood of success on the merits because of Defendants' blatant, willful, and malicious

infringement on Venus' trademark, especially after notice to cease and desist was provided.

49.   Venus has been damaged by all of the foregoing, and is entitled to its damages, in an amount to be determined at trial, Defendants' profits, the cost of this action, and attorney's fees.

### THIRD COUNT
### Common Law Trademark Infringement

50.   Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth at length herein.

51.   Venus owns all right, title, and interest in the ETERNITY® trademark as applied to or used in association with the field of cut flowers, namely roses.

52.   Venus' ETERNITY® mark is distinctive and has developed a secondary meaning in the public mind so that consumers have come to know and recognize that the ETERNITY® mark identifies particular products and services provided by Venus.

53.   Defendants have been and continue to infringe Venus' ETERNITY® trademark in New York, New Jersey, and elsewhere in the United States by advertising, distributing, selling, and offering to sell goods and services that are identical or closely related to Venus' goods and services marketed under the ETERNITY® mark via using the confusingly similar ETERNAL mark.

54. Defendants' infringing activities have not been approved, authorized, or otherwise consented to by Venus.

55. Defendants' infringing activities have caused, are likely to cause, and are causing confusion, mistake, and/or deception on the part of consumers regarding origin and quality of Defendants' goods promoted under the ETERNAL mark.

56. Defendants' infringing activities have caused, are likely to cause, and are causing confusion, mistake, and/or deception on the part consumers regarding the association (or lack thereof) of Defendants to Venus, or as to the origin, sponsorship or approval of Defendants' goods and services by Venus.

57. Defendants' infringing activities misrepresent the nature, characteristics, qualities and origin of Defendants' goods.

58. Upon information and belief, Defendants' conduct, including its continuing infringement after notice, was committed willfully, knowingly, maliciously, and in conscious disregard of Venus' rights.

59. The aforesaid infringement by Defendants has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Venus' business, goodwill, and reputation.

60. Because Venus' remedy at law is inadequate, Venus

seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to protect its trademark and other legitimate business interests. Venus' business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

61. Venus has a substantial likelihood of success on the merits because of Defendants' blatant, willful, and malicious infringement on Venus' trademark, especially after notice to cease and desist was provided.

62. Venus has been damaged by all of the foregoing, and is entitled to its damages under the common law in an amount to be determined at trial, the cost of this action, and attorney's fees.

## FOURTH COUNT
### (Violation of N.Y. Gen. Bus. Law § 349)

63. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth at length herein.

64. Defendants' unauthorized use of the ETERNAL mark in advertising constitutes deceptive practices through Defendants' appropriation for its own use of the name, brand, trademark, reputation, and goodwill of Venus in violation of N.Y. Gen. Bus. Law § 349.

65.   Upon  information  and  belief,  Defendants'  conduct,
including  its  continuing  infringement  after  notice,  was
committed  willfully,  knowingly,  maliciously,  and  in  conscious
disregard of Venus' rights.

66.   The  aforesaid  conduct  of  Defendants  has  caused,  and
unless  restrained  by  this  Court  will  continue  to  cause,
immediate  and  irreparable  injury  to  Venus'  business.

### FIFTH COUNT
**(Common Law Unfair Competition)**

67.   Plaintiff repeats and incorporates by reference the
allegations set forth in the preceding paragraphs as though
fully set forth at length herein.

68.   The foregoing acts and conduct by Defendants
constitute misleading, deceptive, injurious, or otherwise
improper and wrongful practices which would render competition
unfair.

69.   The aforementioned acts of Defendants constitute
unfair competition and unfair business practices contrary to the
common laws of the United States and the State of New York.

70.   Upon  information and belief, Defendants' conduct,
including their continuing infringement after notice, was
committed willfully, knowingly, maliciously, and in conscious
disregard of Venus' rights.

71.   The aforesaid conduct of Defendants has caused, and

unless restrained by this Court will continue to cause, immediate and irreparable injury to Venus' business.

### SIXTH COUNT
### (Violation of U.S.C. § 1125(d) - Cyber Piracy)

72. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth at length herein.

73. U.S.C. § 1125(d) states:

> **(1)(A)** A person shall be liable in a civil action by the owner of a mark…if, without regard to the goods or services of the parties, that person-- **(i)** has a bad faith intent to profit from that mark…; and **(ii)** registers, traffics in, or uses a domain name that--**(I)** in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; **(II)** in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark;…

74. Venus filed for registration of the mark ETERNITY® and later received a federal registration for the mark ETERNITY® in the field of cut flowers, namely roses (Reg. No. 5,508,537).

75. Defendants have attempted to register, trafficked in, and used a mark confusingly similar to the mark owned by Venus.

76. Upon information and belief, Defendants registered the domain name "eternalfleur.com."

77. Defendants' registration, use, and control of the domain name "eternalfleur.com" is a violation of U.S.C. §

1125(d) in that Defendants have demonstrated a bad faith intent to profit from Venus' ETERNITY® mark and have registered, controlled, and used the domain name "eternalfleur.com," that is confusingly similar to Venus' mark and/or dilutive of the mark.

78. Defendants' bad faith cyber piracy entitles Venus to an order of the court directing forfeiture and/or cancellation of the domain name "eternalfleur.com" or the transfer of the domain name to Venus.

79. The aforesaid conduct of Defendants has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Venus' business.

## SEVENTH COUNT
### (Unjust Enrichment)

80. Plaintiff repeats and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth at length herein.

81. Defendants received benefits from their use of Venus' mark and retention of those benefits would be unjust.

82. Venus has been damaged by all of the foregoing, and is entitled to its damages, in an amount to be determined at trial, the cost of this action, and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Venus Et Fleur, LLC prays that judgment be entered by this Court in its favor and against

Defendants Eternal Fleur, LLC and Amanda Wojtas providing the following relief:

A. Finding that:

    i.   Defendants have infringed Plaintiff's trademark rights under 15 U.S.C. § 1114;

    ii.   Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a));

    iii.   Defendants have engaged in trademark infringement and unfair competition under the common law of New York;

    iv.   Defendants have committed deceptive practices in violation of N.Y. Gen. Bus. Law § 349;

    v.   Defendants have violated Section 43(a) of the Lanham Act (U.S.C. § 1125(d)); and

    vi.   Defendants have been unjustly enriched in violation of New York common law.

B. Granting an injunction and permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from

i.  Engaging in any activity that infringes Plaintiff's rights in Plaintiff's Mark and related intellectual property;

ii.  Engaging in any activity constituting unfair competition with Plaintiff;

iii.  Engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's Mark;

iv.  Making or displaying any statement, representation, or depiction likely to lead the public or the trade to believe (a) Defendants' goods are in any manner approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated with Plaintiff or (b) Plaintiff's goods are in any manner approved, endorsed, licensed, sponsored, authorized or franchised by or associated, affiliated or otherwise connected with Defendants;

v.  Using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

vi.  Registering or applying to register any trademark, service mark, domain name, trade name or other

17

source identifier or symbol of origin consisting of
or incorporating Plaintiff's Mark or any other mark
that infringes or is likely to be confused with
Plaintiff's Mark, or any goods or services of
Plaintiff or Plaintiff as its source; and

vii.   Aiding, assisting or abetting any other individual
or entity in doing any act prohibited by the
foregoing sub-paragraphs.

C. Granting such other and further relief as the Court may
deem proper to prevent the public and trade from deriving
the false impression that any goods or services
manufactured, sold, distributed, licensed, marketed,
advertised, promoted, or otherwise offered or circulated by
Defendant are in any way approved, endorsed, licensed,
sponsored, authorized or franchised by or associated,
affiliated or otherwise connected with Plaintiff or
constitute or are connected with Plaintiff's goods.

D. Directing Defendants to immediately cease all manufacture,
display, distribution, marketing, advertising, promotion,
sale, offer for sale and/or use of any and all packaging,
labels, catalogs, containers, advertisements, signs,
displays and other materials, whether in person, on-line,
or otherwise, in any and all media, that feature or bear
any designation or mark incorporating Plaintiff's Mark or

18

any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Mark that is the subject of the within Complaint, and to direct all distributors, retailers, wholesalers and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell or offer for sale Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale and/or offering for sale of any and all goods, services, packaging, labels, catalogs, containers, advertisements, signs, displays and other materials, whether in person, on-line, or otherwise, in any and all media, featuring or bearing Plaintiff's Mark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Mark, and to immediately remove them from public access and view.

E. Directing that Defendants recall and deliver up for destruction all goods, packaging, advertisements, promotions, signs, displays and related materials, whether in person, on-line, or otherwise, in any and all media, incorporating or bearing Plaintiff's Mark or any other mark that is a counterfeit, copy, confusingly similar variation or colorable imitation of Plaintiff's Mark.

19

F. Directing Defendants to formally abandon with prejudice any and all of its applications to register any mark consisting of, incorporating or containing Plaintiff's Mark or any counterfeit, copy, confusingly similar variation or colorable imitation thereof on any state or federal trademark registry.

G. Directing Defendants to cancel with prejudice any and all of its registrations for any mark consisting of, incorporating or containing Plaintiff's Mark or any counterfeit, copy, confusingly similar variation or colorable imitation thereof on any state or federal trademark registry.

H. Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the Court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied therewith.

I. Awarding Plaintiff damages caused by Defendants' acts described herein.

J. Directing that Defendants account to and pay over to Plaintiff all profits realized by and all damages caused by

20

its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

K. Awarding Plaintiff punitive and exemplary damages as the Court finds appropriate to deter any future willful infringement.

L. Declaring this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

M. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

N. Awarding such other and further relief as the Court deems equitable, just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff Venus Et Fleur, LLC hereby demands trial by jury on every issue so triable.


Dated:  August 14, 2018

/s Sean Mack
SEAN MACK
**PASHMAN STEIN WALDER HAYDEN**
A Professional Corporation
Sean Mack, Esq.
Michael J. Zoller, Esq.
2900 Westchester Avenue, Suite 204
Purchase, New York 10577
Phone: (914) 612-4092
Fax: (914) 612-4088

21

smack@pashmanstein.com
mzoller@pashmanstein.com

**Maldjian Law Group, LLC**
John Maldjian, Esq.
William J. Connelly, III, Esq.
830 Third Avenue, 5th Floor
New York, New York 10022
Phone: (732) 889-1500
Fax: (732) 908-1027
jmaldjian@mlgiplaw.com
wconnelly@mlgiplaw.com

Attorneys for Plaintiff
    **Venus Et Fleur, LLC**